IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| PATRICK B. MURRAY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 06 C 1372 |
| VILLAGE OF HAZEL CREST | ) ) ) | |
| Defendant. | ) ) | |
| MICHAEL J. GAROFALO, DAVID A. NELSON, and MARK S. PEERS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 06 C 3674 |
| | ) | No. 06 C 3675 |
| VILLAGE OF HAZEL CREST, ROBERT B. DONALDSON, GARY A. JONES, and ROBERT L. PALMER, | ) ) ) ) | No. 06 C 3735 |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this court are four related cases that have been assigned to the same judge for purposes of coordinated discovery and pretrial proceedings and, if appropriate, a single trial. The cases, however, have not been consolidated; they remain separately pending cases. Each case is brought by a different plaintiff: Patrick Murray (06 C 1372), Michael Garofalo

(06 C 3674), David Nelson (06 C 3675), and Mark Peers (06 C 3735). Each plaintiff was formerly employed as a sergeant in the Police Department of defendant Village of Hazel Crest. Also named as defendants are Robert Donaldson, mayor/village president of Hazel Crest; Gary Jones, police chief of Hazel Crest since April 22, 2005; and Robert Palmer, village manager of Hazel Crest.[1] Each plaintiff applied for the position of deputy chief of police and alleges that he suffered discrimination because of race when an allegedly less-qualified African-American patrol officer was promoted to that position effective July 12, 2005. There is only one deputy chief position at the police department. Each plaintiff also alleges that he was constructively discharged as a result of his treatment, Murray and Nelson on December 1, 2005, Garofalo in June 2006, and Peers in March 2006. Each plaintiff alleges in his complaint that his damages include the loss of income that he would have earned had he been promoted to

---

[1] Prior to the other cases being reassigned to the same judge, Murray reached an agreement with defendants to dismiss all counts except the Count I Title VII claim against the Village itself. That agreement, which was reduced to a written order entered by the court (see Order dated July 19, 2006, Docket Entry [25] in 06 C 1372), permits continued discovery related to the individual defendants and permits reinstatement of claims and defendants at the close of discovery if Murray believes evidence would support additional claims. The other plaintiffs may have reached similar agreements with defendants, but, if so, appropriate orders have not been entered. Also, none of the defendants have answered the complaints in the other cases. The Village has answered Count I of Murray's complaint.

Deputy Chief and each seeks injunctive relief in the form of a promotion.  Each plaintiff also alleges lost wages from being forced to resign and damages for emotional injury.  Each plaintiff also seeks reinstatement.

Each plaintiff is represented by attorneys Patricia Rummer and Richard Lowell.  Defendant Village of Hazel Crest has moved to disqualify counsel from representing any of the plaintiffs on the ground that conflicts of interest exist among the plaintiffs because each plaintiff contends that he should have been the one promoted to deputy chief of police.  Counsel contend this is not a conflict and that each client desires to be represented by them.

Local Rule 83.51.7 provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after disclosure.
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after disclosure.
> (c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

Local Rule 83.51.9 provides in part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.
\* \* \*
(c) A lawyer who has formerly represented a client in a matter or whose present or former law firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as LR83.51.6 or LR83.53.3 would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as LR83.51.6 or LR83.53.3 would permit or require with respect to a client.

Although defendants cite to both section (a) and section (b) of Rule 83.51.7, it is sections (b) and (c) that apply to representation of multiple plaintiffs in the same case. See N.D. Ill. Loc. R. 83.51.7 Committee Comment, "Conflicts in Litigation." Material limits on the attorney's ability to represent the clients may arise from "incompatibility in positions in relation to an opposing party." Id.

It is a defense to plaintiffs' Title VII failure to promote damages claims, as well as their claims for promotion and reinstatement, that a particular plaintiff would not have been

- 4 -

promoted even if there had been no discrimination. 42 U.S.C. § 2000e-5(g)(2). This can be shown by proof that an applicant other than the particular plaintiff would have been selected even if there had been no discrimination. See Bishop v. Gainer, 272 F.3d 1009, 1016 (7th Cir. 2001), cert. denied, 535 U.S. 1055 (2002); Beland v. Veneman, 2004 WL 3253703 *3-4 (D.D.C. Dec. 21, 2004). The defense that another person would have instead been selected would also apply to any § 1983 discrimination claim that plaintiffs may ultimately be pursuing. See Bishop, 272 F.3d at 1016. To the extent one plaintiff proves that he was the one that would have been promoted if not for discrimination, he provides a defense against the claims of the other three defendants. Thus, the attorney gathering or presenting evidence as to the qualifications of one plaintiff (which is absolutely necessary in order to pursue that plaintiff's interests) is in direct conflict with the interests of the other three plaintiffs who each want to show he is the most qualified or otherwise most likely to have been promoted.

Plaintiffs contend none of them need show that he would have actually been promoted because each can proceed on a "lost-chance theory." See Bishop, 272 F.3d at 1016-17. Under that theory, damages are calculated based on the probability that the applicant would have been promoted. See id. If there are multiple applicants for the position, a successful plaintiff's

back pay and front pay is calculated based on the probability that he or she would have been promoted absent discrimination. Where there was more than one plaintiff seeking the same position, each could recover lost pay based on each plaintiff's probability of obtaining the promotion absent discrimination. For example, if there were five applicants for a position, four plaintiffs and a third person who was selected because of his or her race, and each one (including the one actually selected) was equally qualified to perform the work and equal as to other selection criteria as well, then each plaintiff had a 20% chance of being selected and would be entitled to 20% of the additional income he or she would have received if selected. Under the lost-chance theory, and assuming no option of nonselection for the position, the probabilities that each applicant would have been selected must total 100%. Awarding damages based on probabilities that total in excess of 100% would improperly result in an award of duplicative damages. See Bishop, 272 F.3d at 1016. Since the individual probabilities for all applicants must total 100%, any successful proof that a particular applicant had a greater probability of being selected means that the probable hiring of other applicants must decrease. Thus, even under the lost-chance theory, the plaintiffs in the present cases would be in direct competition with each other regarding lost

wages. Assuming liability can be proven, any successful showing of greater capability by one plaintiff has a direct negative impact on the other plaintiffs. The corollary is that showing one of the plaintiffs is less capable has a positive impact on the other plaintiffs.[2] Even though plaintiffs also claim some damages that are not based directly on lost wages from not being promoted, they are still in direct and irreconcilable conflict regarding back pay and front pay whether proceeding on a lost-chance theory or simply seeking to prove that each was the only one that would have been promoted.

In their surreply, counsel contends for the first time that each plaintiff seeks only his 25% share and not to prove he was more likely to have been promoted than the others. The facts alleged, however, do not support that it would be impossible to differentiate among the plaintiffs so that a 25% apportionment after proof of discriminatory intent is the only likely result. Counsel imply that plaintiffs are willing to forego the possibility of greater damages in the interest of the cost-saving of sharing counsel. There is, however, no indication that plaintiffs have been fully advised of the possibilities and

---

[2] It is also possible that one of the four plaintiffs would stand out as the most qualified. In that circumstance, that plaintiff should have a lawyer independent of the other plaintiffs to advise him whether he should proceed on a lost-chance theory or instead go for it all by taking a traditional approach and eschewing the lost-chance theory.

consented after full disclosure. There is also no indication each plaintiff has been advised of the strengths or weaknesses of his individual claim. Given their representation of all four plaintiffs, as well as their own self-interest in continuing to represent all four, counsel have an actual conflict simply trying to give such advice. Additionally, counsel's speculative result of requiring defendants to take away the promotion and hold a new competition for the position is unlikely.

Finding the existence of a direct conflict of interest does not end the matter since it is possible that the conflict is waivable. Plaintiffs' attorneys point to the affidavits they have provided and contend they have satisfied the requirements of Local Rule 83.51.7. Even ignoring the conclusory nature of the affidavits, they do not show that Rule 83.51.7 is satisfied. The affidavit from each of plaintiffs' attorneys contains the following identical paragraphs:

> 5. I have carefully examined the applicable law and the facts to determine whether any conflict exists with respect to representing all four of the plaintiffs. I have determined as a result that there is no conflict with respect to my representation of the four individuals with respect to their claims in these cases.
> 6. Each of the four plaintiffs has expressly stated that he desires to be represented by the same counsel.

Despite the assertions by counsel that they have examined the law and facts and have determined that no conflict exists,

the above discussion of the law shows that plaintiffs necessarily are in conflict regarding their pursuit of lost income, a form of relief that all have requested.  The fact that all of them have stated that they desire to be represented by the same counsel does not satisfy the requirement of waiver because such consent must occur "after disclosure."  N.D. Ill. Loc. R. 83.51.7(b)(2). See also id. 83.51.7(c).  The affidavits are silent as to any disclosures that were made.  However, before requiring that counsel make full disclosures to their clients and determine if they are willing to continue to consent to representation, it should first be determined whether such a waiver is possible.  As stated in the "Disclosure and Consent" section of the Committee Comment to Local Rule 83.51.7, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."

Here, the four plaintiffs have a common interest in showing that defendants selected the winning candidate because of his race and in showing the lack of qualifications of the candidate that was selected.  There are also likely to be some economies in being represented by the same attorneys.  However, plaintiffs are in direct conflict with each other regarding showing who is the most likely to have been selected for the

promotion. Each plaintiff has an interest in showing that he is highly qualified as well as an interest in showing that other plaintiffs lacked qualifications. The issues in conflict will have a substantial impact on any damages that are recovered. This is a situation where a disinterested attorney would determine that each plaintiff should have his own attorney. Plaintiffs' attorneys would not be able to vigorously pursue damages on behalf of one plaintiff without coming into direct conflict with the interests of the other plaintiffs. Counsel will be disqualified from representing multiple plaintiffs in this case.

Defendants contend that present counsel should not have the option of remaining in the case by representing only one plaintiff, that they should be disqualified from representing any plaintiff in this case. Local Rule 83.51.9 applies to that issue. See N.D. Ill. Loc. R. 83.51.7, Committee Comment, "Loyalty to a Client." If consent is obtained from the other three plaintiffs, it is possible that the attorneys could continue to represent one of the clients, or that each of the current attorneys (who apparently are independent practitioners) could each represent one plaintiff. See N.D. Ill. Loc. R. 83.51.9(a). Whether such representation would be appropriate may depend on whether plaintiffs have already revealed confidential information to the attorneys that would give unfair advantage to

one of the other plaintiffs.  If counsel desires to continue to represent one of the plaintiffs, counsel must carefully consider whether such representation would be appropriate and must obtain the consent of the other plaintiffs, including after each of the other plaintiffs has retained his new counsel.

Discovery in this case will be stayed until January 24, 2007.  The new discovery closing date will be May 15, 2007.  Plaintiffs shall retain new counsel by no later than January 5, 2007.  New counsel shall promptly move for leave to substitute their appearances for former counsel.  If, on the advice of new counsel, any plaintiff desires to amend his existing complaint, that plaintiff must file an amended complaint by no later than January 8, 2007.[3]  If current counsel remains in any case, counsel shall file a pleading in that case so stating.  In the three cases other than <u>Murray</u>, defendants' counsel shall promptly meet with new counsel to discuss whether any agreement can be reached similar to the July 19, 2006 order entered in the <u>Murray</u> case.  Defendants shall answer or otherwise plead in those cases by no later than January 22, 2007.  The next status hearing for these cases will be held on January 10, 2007 at 11:00 a.m.

---

[3] Since defendants have not answered, leave is not required to amend the complaints.  <u>See</u> Fed. R. Civ. P. 15(a). The only plaintiff who would need to file a motion for leave to amend would be Murray, since the Village answered his complaint.

IT IS THEREFORE ORDERED that defendants' motion to disqualify counsel [31] (filed in 06 C 1372) is granted in part and denied in part. The present attorneys for plaintiffs are disqualified from representing more than one plaintiff in these four cases and may only represent one of the plaintiffs by obtaining the counseled consent of the three other plaintiffs. Discovery in the four cases is stayed until January 24, 2007 and all discovery is to be completed by no later than May 15, 2007. Defendants in 06 C 3674, 06 C 3675, and 06 C 3735 shall answer or otherwise plead by no later than January 22, 2007. A status hearing for all four cases will be held on January 10, 2007 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 7, 2006