

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICK B. MURRAY,         )
MICHAEL J. GAROFALO,    )
and MARK S. PEERS,       )
                         )
        Plaintiffs,    )
                         )
    v.             )   No. 06 C 1372
                         )   No. 06 C 3674
VILLAGE OF HAZEL CREST,   )   No. 06 C 3735
ROBERT B. DONALDSON, GARY A.  )
JONES, and ROBERT L. PALMER,  )
                         )
        Defendants.    )

# <u>OPINION AND ORDER</u>

Plaintiffs Patrick Murray, Michael Garofalo, and Mark Peers were

formerly employed as police officers for defendant Village of Hazel Crest. Each

plaintiff has filed a separate case and each is presently represented by separate

counsel. *See Murray v. Village of Hazel Crest*, 2006 WL 3589969 (N.D. Ill.

Dec. 7, 2006) (disqualifying counsel from representing more than one plaintiff).

Also named as defendants in their individual capacities are Mayor Robert

Donaldson, Village Manager Robert Palmer, and former Police Chief Gary Jones.

Plaintiffs, who are White, allege they were discriminated against in 2005 when they applied for two Deputy Police Chief positions and an African-American was selected for one of the positions. Presently pending are defendants' motions for summary judgment and to dismiss, each plaintiff's motion for summary judgment as to liability, related motions to strike, and a motion to deem facts admitted.

Each plaintiff's Complaint contains five counts. Count I alleges a racially discriminatory denial of promotion and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Hazel Crest is the only defendant named in Count I, which is consistent with the provisions of Title VII. Count II is labeled as "intentional interference with plaintiff's civil rights under color of law prohibited by 42 U.S.C. § 1983." In addition to incorporating the allegations of Count I, Count II makes reference to being denied a property interest in employment because of race and in violation of the Fourteenth Amendment. Although Count II could be read as including a due process claim for deprivation of property, plaintiffs clarify that Count II is an equal protection claim raising the same claims as in Count I, but pursuant to § 1983 and against all defendants.[1] Count III is labeled as "intentional

_____

[1]Plaintiffs are not bound by the characterizations of their claims contained in each Complaint; they may rely on any theory supported by the facts

- 2 -

interference with plaintiff's contractual relationship of employment based on plaintiff's race in violation of 42 U.S.C. § 1981." The allegations of Count I are again incorporated and repeated references are added regarding a contractual relationship of employment. Again, plaintiffs clarify that Count III makes the same discrimination claims as Count I, but pursuant to § 1981 and against all defendants. Count IV is labeled as a "conspiracy to deprive plaintiff of his civil rights in violation of 42 U.S.C. § 1985" and is brought against all defendants.[2] Count V is a state law breach of contract claim based on alleged violations of Hazel Crest's Employee Personnel Manual. Hazel Crest is the only Count V defendant.[3]

---

alleged. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *3525 N. Reta, Inc. v. FDIC*, 2011 WL 62128 *4 n.9 (N.D. Ill. Jan. 6, 2011); *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, ___ F. Supp. 2d ___, 2010 WL 4260085*3 n.8 (E.D. Wis. Oct. 27, 2010).

[2]Plaintiffs do not respond to defendants' contention that this claim fails because it improperly relies on an intracorporate conspiracy. *See Coleman v. Cumberland Police Dep't*, 2010 WL 2735623 *2-3 (S.D. Ind. July 9, 2010) (quoting *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir.1999)). Count IV will be dismissed.

[3]Plaintiffs do not respond to Hazel Crest's contention that Count V should be dismissed because the Employee Personnel Manual is not an enforceable contract. *See generally Moss v. Martin*, 473 F.3d 694, 700-01 (7th Cir. 2007). Count V will be dismissed.

Earlier in these proceedings, defendants moved to dismiss Counts II through V of Murray's Complaint. This bench generally does not address partial motions to dismiss that will not significantly affect discovery. On the court's suggestions, all the plaintiffs and defendants agreed to dismiss Counts II through V without prejudice to moving to reinstate if discovery supported such claims and the liability of the defendants named in each count. Following the close of discovery, leave was granted to reinstate these counts. Hazel Crest thereafter moved for summary judgment. Instead of simply incorporating into a summary judgment motion the legal arguments regarding the additional counts, defendants again moved to dismiss the other counts. One consolidated brief was filed in support of both motions. In the brief, defendants made the argument that, even if they adequately stated grounds for relief, Counts II through V should be dismissed on summary judgment, generally for the same reasons that Count I should be dismissed. In their response, plaintiffs objected to summary judgment arguments being made regarding the latter counts even though there was no formal summary judgment motion as to those counts. In their reply, defendants request that, pursuant to Rule 12(d), their Rule 12(b)(6) motion be converted to a summary judgment motion. Two of the plaintiffs move to strike that request, contending it

is untimely, the motion to dismiss is not supported by fact statements and documentary submissions, and plaintiffs have not been provided an opportunity to respond.

Defendants' manner of proceeding was odd, but it was clear from their opening brief that the same factual issues that were raised regarding Count I were being raised by all defendants regarding Counts II and III as well.[4] This is not the least bit surprising since the standards for proving discrimination that apply to Title VII are essentially the same as those applicable to § 1981 and § 1983 employment discrimination claims. *Benders v. Bellows & Bellows*, 515 F.3d 757, 768 n.7 (7th Cir. 2008); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 782 (7th Cir. 2006).[5] It is disingenuous for plaintiffs to contend that the summary judgment request comes as a surprise and that they have not had an adequate opportunity to respond. The summary judgment issue is raised in defendants' opening brief and

_____

[4]Since, as previously stated, Counts IV and V are otherwise being dismissed, they need not be further addressed.

[5]The applicable statutes of limitations and the relief available differ as between Title VII and the other two statutes, but those issues are not involved in the pending motions. The only substantive differences that may arise regarding the pending motions are distinctions between holding a municipality liable under Title VII and the other two statutes and that the individual defendants are not appropriate defendants to the Title VII claims.

defendants do not attempt to rely on facts that are not otherwise included in the fact statement filed in support of the summary judgment motion. Moreover, plaintiffs file their own summary judgment motions which necessitated that plaintiffs provide factual support for all essential elements of their claims. Not including speaking motions that are essentially briefs, plaintiffs have filed six separate briefs regarding the motions before this court. Plaintiffs have had an adequate opportunity to address all the factual and legal issues related to summary judgment regarding Counts II and III, which is all that Rule 12(d) requires. *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); ***Eliasen v. Itel Corp.***, 82 F.3d 731, 738 (7th Cir. 1996); ***Velez v. Kamin***, 2008 WL 90071 *1-2 (E.D. Wis. Jan. 2, 2008); ***Robinson v. Oatman***, 1999 WL 98338 *2 (N.D. Ill. Feb. 19, 1999); ***Kipnis v. Baram***, 949 F. Supp. 618, 621 (N.D. Ill. 1996). In any event, the Rule 12(b)(6) motion is not being converted to a Rule 56 motion. As defendants argue in their opening brief, the factual issues raised in Hazel Crest's summary judgment motion are being considered as regards all counts and defendants, which is an appropriate request. *See **Pirtle v. Ahmed***, 2007 WL 2710447 *1 (S.D. Ill. Sept. 10, 2007); ***Penn v. Chicago State Univ.***, 162

F. Supp. 2d 968, 974-75 (N.D. Ill. 2001), *aff'd sub nom.*, ***Penn v. Harris***, 296 F.3d 573 (7th Cir. 2002). *Cf.* ***Eliasen***, 82 F.3d at 738. Also, it is sufficient notice that a Rule 12(b)(6) motion is filed and the moving party alternatively requests summary judgment to the extent documents outside the pleadings are considered. ***Miller v. Herman***, 600 F.3d 726, 732-33 (7th Cir. 2010) (quoting ***Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150***, 433 F.3d 1024, 1029 (7th Cir. 2006)). Summary judgment will be considered as to Counts I, II, and III. Plaintiff's motions to strike the Rule 12(d) request will be denied.

Plaintiffs also move to strike certain factual responses of defendants and/or deem certain fact statements as admitted. Although not filing a formal motion, defendants also make a similar request in some of their responses to plaintiffs' fact statements. No fact statements will be stricken. To the extent the particular fact statements are material facts that need to be considered, the objections raised have been considered in determining whether there are genuine factual disputes that preclude summary judgment. The motions to strike and to deem facts admitted will be denied without prejudice.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes

resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville &*
*Davidson County, Tenn.*, 129 S. Ct. 846, 849 (2009); *Stokes v. Bd. of Educ. of*
*City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d
458, 462 (7th Cir. 2009). The burden of establishing a lack of any genuine issue
of material fact rests on the movant. *Delta Consulting Group, Inc. v. R. Randle*
*Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009); *Hicks v. Midwest Transit,*
*Inc.*, 500 F.3d 647, 651 (7th Cir. 2007); *Outlaw v. Newkirk*, 259 F.3d 833, 837
(7th Cir. 2001). The nonmovant, however, must make a showing sufficient to
establish any essential element for which he or it will bear the burden of proof at
trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Nat'l Athletic*
*Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008); *Hicks*,
500 F.3d at 651. The movant need not provide affidavits or deposition testimony
showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324;
*Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill.
Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill.
March 23, 2004). Also, it is not sufficient to show evidence of purportedly
disputed facts if those facts are not plausible in light of the entire record. *See*
*Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007);

*Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 236 (7th Cir. 1995); *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir. 1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476-77 (7th Cir. 1988); *Freundt*, 2007 WL 4219417 at *2. As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary

judgment." ***McGinn v. Burlington Northern R.R. Co.***,
102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).
Furthermore, a factual dispute is "genuine" for summary
judgment purposes only when there is "sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242,
249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt"
regarding the existence of a genuine fact issue is not enough
to stave off summary judgment, and "the nonmovant fails to
demonstrate a genuine issue for trial 'where the record taken
as a whole could not lead a rational trier of fact to find for the
non-moving party . . . .'" ***Logan***, 96 F.3d at 978 (quoting
***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***,
475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

***Outlaw***, 259 F.3d at 837.

Both sides have moved for summary judgment. Therefore, any genuine

factual disputes must be resolved in one manner for defendants' summary

judgment motions and in another manner for plaintiffs' summary judgment

motions. Also, reasonable inferences must be drawn in each plaintiff's favor on

defendants' motions and in defendants' favor on each plaintiff's motion.

Hazel Crest has a single Police Chief. Since 2002, it has had two

Deputy Chiefs. In April 2005, defendant Donaldson was elected Mayor. Prior to

Donaldson taking office in May 2005, Police Chief Fee resigned as did Deputy

Chief Richard Lenz. Jones, who had been the other Deputy Chief, was appointed

acting Police Chief. In June 2005, after Donaldson and new Village Trustees took office, Jones was made the Police Chief. This left two openings for Deputy Chief. As of the 2000 census, the population of Hazel Crest was 76.3% African-American and may have been somewhat higher as of 2005. Donaldson is African-American. Palmer, the Village Manager, and Jones are White. Fee and Lenz are also White. In July 2002, Jones selected Gary Gentzle and Malcolm White as the new Deputy Chiefs, Gentzle as Deputy Chief of Patrol and White as Deputy Chief of Support Services. Gentzle is White and White is African-American. White had been a patrol officer. Prior to White's appointment as Deputy Chief, the Police Department had never had an African-American as a sergeant or any other supervisory level among the sworn officers.[6] The plaintiffs (including David Nelson who previously dismissed his case) were the only others to apply for the Deputy Chief positions. Plaintiffs are all White and were all sergeants in the Police Department. As of July 2005, Murray and Garofalo had been sergeants for more than two years and Peers for less than two years.

The Police Department has an Equal Opportunity Action Plan. In December 2004, Chief Fee issued a revised version. The Plan's stated purpose is

---

[6] Prior to 2005, an African-American woman had a supervisory civilian position in Dispatch and Records.

to actively recruit qualified females and minorities and to ensure that equal opportunity exists in practice. The general policy statement is "to actively support equal opportunity by establishing programs with goals and objectives designed to enhance a non-discriminatory employment environment and to ensure equal opportunity exists for all employees regardless of race, color, sex, religion, marital status, national origin or ancestry, age, or physical or mental handicap unrelated to ability." The particulars of the Plan are focused on attracting qualified minority and female applicants. There is no provision regarding favoring minorities during the selection process. The stated goals of the Plan include having a Department, including supervisory personnel, that reflect the same racial and gender makeup as that in the Village population. It is also an objective that "all employees are of the highest caliber possible."

Plaintiffs point to the following direct evidence to support that White was selected because he is African-American while they are not. Jones testified that in making his Deputy Chief selection, "White's race was a consideration, but it was not the reason." He further explained that, in making his decision, he was aware of complaints from the community and the Village Board that the Police Department's supervisory level lacked minorities. He also noted the EEO Plan's

goal of being representative of the community. When Jones was acting Chief,[7]

Jones commented to Garofalo that he was not yet a Deputy Chief because:

"Wrong color. They don't want you."[8] Jones had told Murray that he intended to

promote him to Deputy Chief for Support Services. After White was promoted,

Jones told Murray and others that he promoted White because Donaldson wanted

an African-American Deputy Chief.[9] During his mayoral campaign, Donaldson's

platform included promoting more "diversity" in the administration of Hazel Crest.

After White's promotion to Deputy Chief, Donaldson publicly thanked Jones for

promoting diversity. On defendants' motions for summary judgment, it must be

taken as true that White's race was a factor in selecting him as a Deputy Chief.

---

[7]Garofalo could not recall if this was said while or before Jones was acting Chief. However, it would seem that such a comment would have been made when the Deputy Chief position was open, which would have been when Jones was acting Chief. In any event, any ambiguity must be resolved in plaintiff's favor. On defendants' motions, it must be assumed that the statement was made when Jones was acting Chief.

[8]Jones denies making this statement. On defendants' summary judgment motions, it is assumed that Jones made this statement. On plaintiffs' summary judgment motions, it is assumed he made no such statement.

[9]Jones denies making such statements. For defendants' motions, it is assumed he made the statements while, on plaintiffs' motions, it is assumed he did not.

Even if race was considered, plaintiffs cannot succeed on their discriminatory promotion claims unless they would have been selected if not for the consideration of race. *Murray*, 2006 WL 3589969 at *2. Evidence supports that Murray would have been Jones's choice for the position if not for pressure to select an African-American. Murray's promotion claim cannot be dismissed on the ground that he would not have been promoted if not for the selection of White based on race.

Garofalo and Peers do not contend that they were more qualified than Murray nor do they point to evidence supporting that they would have been selected for the position if it had not gone to White. They instead contend that they can rely on a lost-chance theory. *See generally Alexander v. City of Milwaukee*, 474 F.3d 437, 449-51 (7th Cir. 2007).

Illinois law provides that, for a Village with Hazel Crest's population and number of police officers, Village ordinance can provide that the Chief can appoint up to two Deputy Chiefs "from any rank of sworn, full-time officers of the municipality's police department, but [the appointee] must have at least 5 years of full-time service as a police officer in that department." 65 ILCS 5/10-2.1-4. The state statute contains no further limits on the Chief's discretion to appoint Deputy

Chiefs. A 2001 Hazel Crest ordinance provided for two Deputy Chiefs and tracked the minimum qualifications set forth in the statute. Def. Exh. M. In 2001, Chief Fee issued a Position Description ("PD") for Deputy Chief. Def. Exh. N. It is expressly stated that duties are not limited to those set forth in the PD. The PD has a section entitled "Desired Minimum Qualifications" which sets forth education and experience requirements for the position. Those requirements, while "desired," are not mandatory for the position. There are also a list of "Special Requirements." One, a valid's driver's license, is expressly stated to be mandatory ("[m]ust possess"). Another, a mid-level police management course, is expressly stated to be" desirable." It is unclear whether the other Special Requirements, all of which were apparently satisfied by both plaintiffs and White, are mandatory or merely preferred. White, as well as Peers, did not possess all the "desired" qualifications. Since desired, not required, it was within the Chief's discretion whether or not to appoint as Deputy Chief a person who did not have all the desired qualifications.

Plaintiffs contend that, if it is successfully shown that race was a factor in the selection of White, the three remaining plaintiffs should be compensated for the missed promotion based on each plaintiff's percentage chance of being

selected. Garofalo and Peers, however, have not pointed to evidence that they had any significant chance of being the one actually selected as Deputy Chief. They cannot succeed on a lost-chance theory. The Counts I, II, and III failure to promote claims of Garofalo and Peers will be dismissed. Further consideration of the failure to promote claim will be limited to Murray.

Even taking as true that race was considered, defendants contend it was within Jones's discretion to determine who to hire and the court should defer to his discretion. This is a race discrimination lawsuit, not a class-of-one equal protection claim that requires a showing of irrationality. *Compare **Engquist v. Ore. Dep't of Agric.***, 553 U.S. 591 (2008). There is direct evidence that race motivated the decision to select White. This is not a case in which the court should, as defendants seem to contend, simply defer to Jones's statement that he preferred White because Jones had wide discretion in making the hiring decision. That discretion did not include the discretion to make racially discriminatory decisions.

Defendants also contend that it is proper to consider the race of applicants, the racial makeup of the community, and diversity when selecting police personnel. That can be true in certain circumstances, but it requires a

showing that the governmental entity has a compelling interest in increasing the number of minority police personnel and a narrow tailoring of the program for increasing minority police personnel. *See Petit v. City of Chicago*, 352 F.3d 1111, 1114-16 (7th Cir. 2003). Defendants have not made any showing of a compelling interest, nor have they established that the existence of a compelling interest is an undisputed fact.

Still to be considered is whether particular defendants may be held liable. Jones's personal participation in the promotion decision is not contested. Evidence supports that Donaldson was personally involved in the decision to promote White. Donaldson is a policymaking official of Hazel Crest so his involvement also provides a basis for holding the Village liable under § 1981 and § 1983.[10] There is, however, insufficient evidence of Village Manager Palmer's involvement in the claimed discrimination. His appointment of Jones did not make him responsible for any subsequent discriminatory acts by Jones. All claims against Palmer will be dismissed.

------

[10]There is also evidence supporting that Jones was accorded policymaking authority for hiring decisions. This need not be conclusively decided since the § 1981 and § 1983 claims against the Village otherwise survive based on Donaldson's involvement.

Donaldson and Jones also contend that they are entitled to qualified immunity because affirmative action law was not clearly established as of July 2005. However, it was already clear that application of racial criteria required a compelling interest and that it be narrowly tailored. *See Petit*, *supra*; ***Alexander***, 474 F.3d at 446-48. Donaldson and Jones are not entitled to qualified immunity on the failure to promote claim of Murray.

Murray's Counts I, II, and III failure to promote claim will not be dismissed, except as against Palmer. It still must be considered whether, resolving factual disputes and drawing all reasonable inferences in defendants' favor, Murray is entitled to summary judgment as to liability. As previously indicated, on Murray's summary judgment motion, it cannot be assumed that Jones stated that he would have selected Murray if he had not been pressured to instead select an African-American. It is still taken as true that Jones testified White's race was a consideration, but not the reason for his hiring. Jones provides reasons why he would have selected White instead of Murray even taking into account Murray's education and experience compared to White's. On defendants' summary judgment motion, Murray's evidence (including direct evidence of Jones's statements) is sufficient to raise a genuine factual dispute as to pretext. On

Murray's motion, though, which requires resolving factual disputes in defendants' favor, it is not conclusively established that Jones's stated legitimate reasons are pretext. Murray is not entitled to summary judgment of liability on his failure to promote claim.

Subsequent to June 2005, all three plaintiffs resigned, began collecting pensions based on their employment with Hazel Crest, and have taken other positions in law enforcement.[11] They all claim that they were constructively discharged because their lack of opportunities with the Hazel Crest Police Department forced them to resign. A plaintiff claiming constructive discharge must show that he was forced to resign because working conditions, from the standpoint of the reasonable employee, were unbearable. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (quoting *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002)). This can include:[12] "'[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that [he] will be terminated, and the plaintiff employee resigns, the employer's

---

[11]Peers and Garofalo took positions with police departments of other Chicago suburbs. Murray took a teaching position at the Northwestern Indiana Law Enforcement Academy.

[12]Plaintiffs disclaim relying on excessive harassment that makes remaining employed intolerable. *See Fischer*, 519 F.3d at 409.

conduct may amount to constructive discharge.' In other words, constructive

discharge also occurs where, based on an employers actions, '"the handwriting

[was] on the wall" and the axe was about to fall.'" *Fischer*, 519 F.3d at 409

(quoting *Univ. of Chicago Hosps.*, 276 F.3d at 332). The Seventh Circuit has

noted that an employee "who is told repeatedly that he is not wanted, has no

future, and can't count on ever getting another raise would not be acting

unreasonably if he decided that to remain with this employer would necessarily be

inconsistent with even a minimal sense of self-respect, and therefore intolerable."

*Hunt v. City of Markham, Ill.*, 219 F.3d 649, 655 (7th Cir. 2000). Still, absent

intolerable harassment, the situation must be such that it was made clear to the

employee that he or she would be fired if she did not resign first. *See Univ. of*

*Chicago Hosps.*, 276 F.3d at 332; *Tropp v. Ingalls Mem'l Hosp.*, 2007 WL

869555 *10 (N.D. Ill. March 21, 2007).

Plaintiffs point to evidence that Jones recommended to them that they

seek employment elsewhere and that their careers would be over and they would

have no opportunities at Hazel Crest. He also told them that Hazel Crest would

not be a nice place to work. Each plaintiff testified that Jones made such

statements at a staff meeting that occurred prior to Jones being selected to replace

Fee. He qualified these statements by also saying all this would occur if he was not appointed Chief. Murray testified that statements about no opportunities may have also occurred after Jones became Chief. Garofalo's testimony is ambiguous as to whether statements about lack of opportunities were made after Jones was Chief.[13] Jones's prognostication that Hazel Crest would not be a nice place to work is not evidence supporting constructive discharge since plaintiffs do not provide evidence that work conditions themselves became intolerable. At most, plaintiffs' evidence supports that they could expect no further advancement or promotions.[14] There is no evidence that they would be denied any raises they could receive as sergeants or that their pay would be cut. There is no evidence that they were told they were not wanted so repeatedly that a reasonable person would understand it to mean that it was desired that they resign. Plaintiffs do not present evidence supporting that they should have expected to be fired if they did not first resign. Plaintiff's constructive discharge claims will be dismissed.

---

[13]Murray's and Garofalo's statement that others told them Jones made statements are not considered since that would be inadmissible hearsay as to whether or not Jones made the statements.

[14]Contrary to this contention, under Jones, Murray was placed in charge of maintaining Hazel Crest's accreditation. This may not have involved a raise in pay, but it involved increased responsibilities.

The only remaining claim is plaintiff Murray's claim of a discriminatory denial of a promotion in violation of Title VII, § 1981, and § 1983. The parties should promptly meet to discuss the possibility of settlement. Absent a settlement, the remaining parties are to submit a proposed final pretrial order on the date set forth below. In preparing proposed jury instructions for the final pretrial order, the parties should consider omitting any specific reference to Title VII, § 1983, or § 1981 and simply instructing the jury as to a single claim of discriminatory denial of a promotion.

IT IS THEREFORE ORDERED that:

(1) In **06 C 1372** (Murray), plaintiff's motion to strike [155] is denied without prejudice. Plaintiff's motions for summary judgment and to strike [127, 153] are denied. Defendants' motion for summary judgment [103] is granted in part and denied in part. All claims are dismissed except the Counts I, II, and III claim of discriminatory denial of a promotion. All claims against defendant Robert Palmer are dismissed and defendant Palmer is dismissed from this action. In open court on March 24, 2011 at 11:00 a.m., the remaining parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire

questions, motions in limine with supporting briefs, and proposed jury instructions.

     (2) In **06 C 3674** (Garofalo), plaintiff's motion to strike [116] is denied without prejudice. Plaintiff's motions for summary judgment and to strike [88, 114] are denied. Defendants' motion for summary judgment [64] is granted. The court will withhold entry of final judgment in this case until the **Murray** case (06 C 1372) has been resolved.

     (3) In **06 C 3735** (Peers), plaintiff's motion to deem facts admitted [132] is denied without prejudice. Plaintiff's motion for summary judgment [112] is denied. Defendants' motion for summary judgment [88] is granted. The court will withhold entry of final judgment in this case until the **Murray** case (06 C 1372) has been resolved.

ENTER:

_Virginia T. Hart_
_____
UNITED STATES DISTRICT JUDGE

DATED: JANUARY _3l_ , 2011

- 23 -